IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RTI BIOLOGICS, INC., f/k/a
REGENERATION TECHNOLOGIES, INC.,
and RTI DONOR SERVICES, INC.
    Plaintiffs,

vs.

LEXINGTON INSURANCE COMPANY
and CHARTIS CLAIMS, INC.
    Defendants.
_____/

CASE NO.: 1-10-cv-233
DIVISION: SPM-GRJ

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs, RTI BIOLOGICS, INC., f/k/a/ REGENERATION TECHNOLOGIES, INC. (hereinafter "RTI"), and RTI DONOR SERVICES, INC. (hereinafter "Donor Services"), by and through their undersigned counsel, file this complaint against the Defendants, LEXINGTON INSURANCE COMPANY and CHARTIS CLAIMS, INC., and allege as follows:

### NATURE OF ACTION

1. This is an action for declaratory judgment, breach of contract and breach of fiduciary duty resulting from the conduct of the Defendants. Specifically, as a result of the Defendants' conduct, the Plaintiffs herein have been damaged, such damages including but not limited to the improper diminution of Plaintiffs' policy limits, attorney's fees and costs. Further, by this action, the Plaintiffs herein seek a declaration of their rights under the policies of insurance issued by Defendants and identified herein, and the duties and obligations owed by the Defendants.

1

Filed 1129'10 USDC FlnlPM0213
KM

## JURISDICTION AND VENUE

2. This is an action pursuant to 28 USC § 1332(a)(1). There is diversity of citizenship between the Plaintiffs and the Defendants. Further, the amount in controversy exceeds the sum of $75,000.00, exclusive interest and costs.

3. This Court has personal jurisdiction over the Defendants in this matter.

4. Venue is proper pursuant to 28 USA §1391(a) because the substantial part of the events giving rise to the claim at issue occurred in this district.

5. An actual controversy within the meaning of 28 USC §2201 exists between the parties.

## PARTIES

6. The Plaintiffs are incorporated in the State of Delaware with their principal place of business in Alachua, Florida.

7. Upon information and belief, the Defendant, Lexington Insurance Company ["Lexington"], is a United States citizen, a citizen (incorporated in) the state of Delaware, with its principal place of business in Boston, Massachusetts.

8. Upon information and belief, the Defendant, Chartis Claims, Inc. ["Chartis"], is a US citizen and resident of (incorporated in) the State of Delaware, with its principal place of business in the City of New York, State of New York. This Defendant was formerly known as AIG Domestic Claims, Inc.

## FACTUAL BACKGROUND

### A. The Insureds and the Applicable Policies

9. RTI is a provider of biological implants and processes human tissue for allogenic grafts for a variety of surgical uses.

10. Donor Services is an accredited recovery organization which assists in the process of human tissue donation for ultimate delivery of the tissue for allogenic grafts.

11. As a result of the individual applications for insurance submitted by Donor Services and RTI, as well as the distinct underwriting procedures and processes utilized by Lexington and Chartis, such Defendants were fully aware of the distinct functions, businesses and conduct of RTI and Donor Services.

12. RTI was insured by the Defendant Lexington under the following policies of insurance written on an occurrence basis:

(a) Policy 6793430 (Exhibit A), with a Policy Period of February 28, 2005 through February 28, 2006, bearing an aggregate limit of Ten Million Dollars in coverage;

(b) Policy 6793430 (Exhibit B), with a Policy Period of February 28, 2006 through February 28, 2007, bearing an aggregate limit of Ten Million Dollars in coverage;

(c) Policy 6793430 (Exhibit C), with a Policy Period of February 28, 2007 through February 28, 2008, bearing an aggregate limit of Ten Million Dollars in coverage [such Policies hereinafter referred to as "RTI Policies"];

13.     Each of the above RTI Policies provides that the Defendants' payment of attorneys' fees and costs in the defense of any claims and/or actions erodes the limits of coverage [hereinafter "RTI Eroding Policies"].

14.     Donor Services was insured by the Defendant Lexington under the following policies of insurance, written on an occurrence basis:

(a)     Policy 6793365 (Exhibit D), with a Policy Period of January 5, 2005 through January 5, 2006, bearing an aggregate limit of Two Million Dollars in coverage;

(b)     Policy 6793935 (Exhibit E), with a Policy Period of February 28, 2006 through February 28, 2007, bearing an aggregate limit of Two Million Dollars in coverage;

(c)     Policy 6793935 (Exhibit F), with a Policy Period of February 28, 2007 through February 28, 2008, bearing an aggregate limit of Two Million Dollars in coverage [hereinafter collectively referred to as "Donor Services Policies"];

15.     Each of the above Donor Policies provides that the Defendants' duty to defend includes the obligation to pay attorneys' fees and costs in the defense of any claims and/or actions, and that such payments and costs do not affect, or erode, the limits of coverage [hereinafter "Donor Services Non-Eroding Policies"].

16.     By specific endorsements, RTI is an Additional Insured under the Donor Services Non-Eroding Policies.

**B.     The Underlying Litigation**

17.     Commencing in or about 2002, Donor Services contracted with Michael Mastromarino ["Mastromarino"] and his corporate entities, BioTissue Technologies and

BioMedical Tissue Services ["BTS"][hereinafter collectively, "Mastromarino/BTS"], to perform tissue recovery services.

18. Mastromarino/BTS were duly authorized and licensed tissue specialists.

19. Mastromarino/BTS performed recovery services for Donor Services pursuant to those contracts during the years 2002-2005.

20. Donor Services, as part of its business, reviewed the Mastromarino/BTS documents evidencing consent and donor eligibility and, in some instances, approved tissue for shipment to RTI.

21. Tissue recovered from donors by Mastromarino/BTS was shipped and, in some instances, processed and distributed as allografts by RTI during the period 2002 through October 4, 2005.

22. On October 4, 2005, due to questions raised as to the validity of consents obtained by Mastromarino/ BTS, all tissue in the possession of RTI which had been originally recovered by Mastromarino/BTS was put on "lookback" status by RTI.

23. On October 10, 2005, RTI announced a market withdrawal of all tissue which had originally been recovered by Mastromarino/BTS.

24. On October 12, 2005, the FDA directed RTI to initiate a recall of all tissue which had originally been recovered by Mastromarino/BTS.

25. On October 21, 2005, RTI notified Lexington of the concerns relating to the Mastromarino/BTS recovered tissue and of the RTI and FDA activities relating to tissue which had originally been recovered by Mastromarino/BTS.

26. Two distinct types of claims were subsequently initiated by third parties ["Claimants"] against RTI and/or RTI Donor Services (or both) with relation to tissue recovered by Mastromarino/BTS.

27. Claimants who were the recipients of allografts made from Mastromarino/BTS recovered tissue alleged that they were exposed to untested and unsafe tissue and had suffered either the transmission of disease, the exposure to disease to be contracted in the future, or the fear of contracting disease ["Recipient Claims"].

28. Claimants who were family members of the deceased donors from whom Mastromarino/BTS recovered tissue alleged that they had experienced mental suffering as a result of having the bodies of their relatives donated for allograft production without their consent ["Donor Claims"].

29. Over the course of time, nearly 1000 Recipient Claims were instituted against RTI, and approximately 90 Donor Claims were instituted against either RTI or Donor Services, or both.

C. **Lexington and Chartis's Handling of the Recipient and Donor Claims**

30. Chartis, and its predecessor, AIG Domestic Claims, managed all of the claims against RTI and Donor Services and issued all coverage positions as to claims with respect to RTI and Donor Services and continues to do so.

31. Lexington and Chartis appointed defense counsel for both RTI and Donor Services, specifically Cozen & O'Connor ["Cozen"] and supervised such firm through Chartis.

6

32. It was Lexington and Chartis's obligation to make sure that Defendants received cost-effective defense services designed to serve the best interests of the insureds.

33. RTI and Donor Services turned over the defense of the Donor and Recipient Claims to Lexington and Chartis and relied upon such Defendants to handle such lawsuits in a manner consistent with the fiduciary duties owed by the Defendants to the Plaintiffs.

34. Lexington and Chartis established a system whereby new claims would be received by Cozen and Chartis, and would be assigned by Chartis to the RTI Policy or the Donor Services Policy, as designated by Chartis.

35. In making such assignments of cases to the RTI or Donor Services Polices, Lexington and Chartis had a conflict of interest, because the Donor Services Policy was Non-Eroding and the RTI Policy was Eroding.

36. The claims person assigned by Lexington and Chartis, for both the Recipient and Donor Claims, and the RTI and Donor Services Policies, was the same person.

37. The investigation effort, at the commencement of both the Recipient and Donor Actions, established unequivocally that the contractual relationship between Mastromarino/BTS was with Donor Services, not RTI, and that any allegations of improper conduct with respect to contracting with, or supervision of, Mastromarino/BTS concerned the activities of Donor Services.

D.  **The Policy Positions Taken By Lexington and Chartis In the Recipient Claims**

38. Individual Recipient Claims were initiated against RTI during all three RTI Policy Periods and after the Policies expired.

39. Pursuant to the RTI Policies, the Defendants took the position that all of the Recipient Claims arose out of the same Medical Incident, thus limiting the applicable aggregate insurance coverage to $10 million, despite the fact that a "medical incident" is defined in such policies as "claims arising from one medical incident or a series of related medical incidents to any one patient".

40. Pursuant to the text of the RTI Policies, "any claim arising out of such medical incident which is subsequently made against any insured and reported to us, shall be considered first made at the time such notice was given to us".

41. As a result of this coverage position, Lexington limited the aggregate limit of the RTI Policies to $10 million dollars, with defense costs eroding such limits.

42. As a result of this coverage position, Lexington interpreted any suit initiated after the expiration of the RTI Policies as "relating back" to the notice originally provided with regard to the Mastromarino/BTS litigation ["Relation Back"].

43. As a result of this coverage position, the Excess Coverage, over and above the RTI Policies, was also limited to $10 million in aggregate coverage.

44. RTI relied on Lexington and Chartis's "single medical incident" and "Relation Back" positions in securing subsequent insurance for RTI in subsequent years.

45. Lexington and Chartis are estopped from taking distinct coverage positions at this point in time.

### E. Lexington and Chartis's Coverage Positions As to the Donor Claims

46. Donor Claims were initiated by Claimants during the last two years of both the RTI and Donor Services Policy Periods, and thereafter after both the RTI and the Donor Services Policies expired ["After-Initiated Donor Claims"].

47. Forty-three Donor Claims, naming as defendants RTI but not RTI Donor Services ["RTI-Only Donor Claims"] were inappropriately assigned by Lexington and Chartis to the RTI Policies, despite (1) Donor Services being the real party in interest, (2) RTI's status as an additional insured under the Donor Services' policy, and (3) the Defendants' knowledge of such facts and the exact nature of Donor Services' business.

48. Prior to January 2008, RTI and Donor Services tendered twenty-five Donor Claims to Defendants for defense and indemnity under the Donor Services Policy.

49. By letter dated January 7, 2008, Lexington and Chartis granted a defense to both RTI and Donor Services for the 25 suits, and acknowledged coverage under a reservation of rights for both RTI and Donor Services for Donor Claims.

50. Pursuant to the Donor Services Policies, the Defendants took the position that all of the Donor Claims arose out of the same Medical Incident, thus limiting the applicable aggregate insurance coverage to $2 million, despite the fact that a "medical incident" is defined in such policies as "claims arising from one medical incident or a series of related medical incidents to any one patient".

51. Pursuant to the text of the Donor Services Policy, "any claim arising out of such medical incident which is subsequently made against any insured and reported to us, shall be considered first made at the time such notice was given to us".

52. As a result of this coverage position, Lexington interpreted any suit initiated after the expiration of the Donor Services Policies as "relating back" to the notice originally provided with regard to the Mastromarino/BTS litigation ["Relation Back"].

53. After the expiration of the Donor Services Polices and prior to March, 2010, Donor Services submitted nine (9) After-Asserted Donor Claims for defense and indemnity to Defendants, and Defendants have provided defense and indemnity (under a reservation of rights) for each of such After-Asserted Donor Claims under their Relation Back interpretation of their own Donor Services Policies.

54. Despite Lexington and Chartis's grant of a defense to RTI on Donor Claims by Letter dated January 7, 2008, Lexington and Chartis directed Cozen to bill all efforts on the Donor Claims, made on behalf of RTI, to the RTI Eroding Policies.

55. Pursuant to this directive, Cozen billed all attorney services properly billable to the Donor Services Non-Eroding Policies to the RTI Eroding Policies.

56. By so doing, the Defendants improperly wasted substantial limits of the RTI Eroding Policies.

57. On September 10, 2009, RTI tendered all of the RTI-Only Donor Claims to the Defendants for indemnity and defense under the Donor Services Polices.

58. In direct contravention of Defendants' coverage position, as taken in its January 7, 2008 letter, Defendants disclaimed coverage of RTI under the Donor Services Policy.

59. On August 26, 2008, as a direct result of the Defendants' improper wasting and diversion of the RTI Policies' limits, Defendants advised that the RTI Policies' limits had been exhausted.

60. During the course of the litigation of the Donor Claims, RTI and Donor Services's counsel notified the Defendants that the Claimants in the underlying Donor Claims would be amending lawsuits to include Donor Services as a party (in RTI-Only Claims) and would be initiating new claims based on new notice becoming available to them.

61. Since February, 2010, RTI and Donor Services have tendered amended complaints (on Donor Claims) naming Donor Services and new Donor Claims naming both RTI and Donor Services ['the New and Amended Lawsuits"].

62. Defendants Lexington and Chartis have improperly, and in bad faith, disclaimed coverage on the New and Amended Lawsuits, in direct contravention of their prior coverage positions, claiming that there is no longer a "single medical incident" or "Relation Back" and asserting that there is no coverage because of late notice and the expiration of the Donor Services Policies.

63. After more than four years of litigation, without a single Donor or Recipient Claim having been resolved, and the limits on the Excess Insurance over the RTI Policies threatened with exhaustion, RTI and Donor Services was constrained to hire independent counsel in an effort to settle the underlying litigation.

64. There was a global settlement effort held before the Federal District Court in New Jersey, to settle all Recipient and Donor Claims. Lexington and Chartis refused to

11

give any authority to settle such claims, despite the Court's recommendation that $8 million dollars be spent to settle such actions.

65. In fact, Lexington and Chartis's coverage counsel appeared before the Court and stated that Lexington would never have to pay any money on the Donor Claims because RTI and Donor Services were guilty of intentional misconduct.

66. As a result of the lack of authority from Lexington, the Donor Claims were severed, and all of the Recipient Claims were settled.

67. Lexington's bad faith settlement position denied the Plaintiffs the opportunity to settle the Donor Claims.

## COUNT I
## BREACH OF CONTRACT

68. The Plaintiffs, by and through their undersigned counsel, reallege and incorporate by reference the preceding allegations contained in paragraphs 1 through 67, as set forth fully herein.

69. This is an action by the Plaintiffs against Defendants for breach of contract.

70. Defendants have breached the aforementioned contracts of insurance with the Plaintiffs, including but not limited to the failing to defend and indemnify the claims brought against the Plaintiffs in the underlying Donor Claims.

71. Defendants have violated the contract of insurance by failing to provide a defense to RTI in the Donor Claims, and in failing to pay for considerable legal fees incurred in the defense of such Donor Claims by RTI.

72. Defendants have breached the contracts of insurance by wasting and dissipating the limits of the RTI Policies.

73. Defendants have breached the contracts of insurance by acting in bad faith and preventing a settlement of the Donor Claims.

74. Defendants' breach have caused Plaintiffs to incur the diminution of the limits of the RTI Policies, the costs of independent counsel, the over-payment of counsel fees (on the RTI Policies) due to Chartis's failure to audit Cozen bills, and the costs attendant to improper disclaimer and defense.

75. The Plaintiffs have agreed to pay the undersigned counsel reasonable attorneys fee, paralegal fee, expenses and costs for having to represent the Plaintiffs in these claims against the Defendants.

Wherefore, the Plaintiffs, RTI and Donor Services, demand judgment against the Defendants, Lexington Insurance Company and Chartis Claims, Inc., for damages including, but not limited to compensatory damages, expenses, costs, pre-judgment interest, post-judgment interest, attorneys fees and paralegal fees pursuant to Florida Statute 627.428 (and all other applicable laws or statues giving rise to attorneys fees and costs) and such further relief as deemed appropriate in the premises and ordered by this court.

## COUNT II
## DECLARATORY RELIEF

76. The Plaintiffs, by and through their undersigned counsel reallege and incorporate by reference the allegations contained in paragraphs 1 through 67, of Plaintiffs complaint as though fully set forth.

77. This is an action for declaratory relief pursuant to 28 USC 2201.

78. There is a just and bona fide actual and present dispute between the parties wherein the Plaintiffs are in doubt and uncertain as to their legal rights and entitlements under the aforementioned policies of insurance.

79. The declaration sought by the Plaintiffs herein is not merely a request for an advisory opinion, but rather for a declaration of the legal rights and obligations regarding a present controversy as to the herein stated facts.

80. The Plaintiffs request a declaration from this Court as to whether coverage is owed under the aforesaid insurance policies to the Plaintiffs with regard to the recipient and donor suits and therefore this declaratory judgment determination is requested.

81. The Plaintiffs, RTI and Donor Services, request this Court assume jurisdiction of this cause and issue a Judgment declaring the following:

a. Defense and indemnification to both RTI and Donor Services as to all Donor Claims currently pending and subsequently instituted, under the Non-Eroding Donor Services Policy;

b. Restoration of the RTI Policies' "limits" representing such amounts in payments of legal fees, costs and disbursements, that were utilized to provide defense to RTI or Donor Services with respect to issues or proceedings that related to Donor Claims or defenses of Donor Services;

c. Payment to RTI and Donor Services of such sums as were expended to have independent counsel perform the settlement work which should have been performed by Lexington/Chartis appointed counsel.

d. Revocation of all disclaimers of coverage under the Donor Services Policies as issued by Lexington and Chartis

WHEREFORE, the Plaintiffs, RTI and Donor Services, respectfully request that this Court issue a declaratory judgment as specified herein and enter an award the Plaintiffs the costs, expenses, and legal fees incurred in this action, and for such other and further relief as this Court deems proper in the premises.

## COUNT III
## BREACH OF FIDUCIARY DUTY

82. The Plaintiffs, by and through their undersigned counsel reallege and incorporate by reference the pre-scene allegations contained in paragraphs 1 through 67, as set forth fully herein.

83. As a result of the contracts of insurance previously described herein, there existed a fiduciary duty owed by the Defendants to the Plaintiffs.

84. Defendants' fiduciary duty required them to act with due regard for the interests of the Plaintiffs.

85. Defendants' fiduciary duty required the Defendants to maximize the coverage available to the Plaintiffs.

86. The fiduciary duty owed by the Defendants to the Plaintiffs has also been breached in the following respects:

    a) The Defendants have failed to exercise reasonable diligence and a level of care commensurate with the undertaking in every aspect of handling the claims against the Plaintiffs.

    b) Failed to handle the underlying claim against the Plaintiffs fairly and honestly and with due regard for the Plaintiffs interests.

    c) Failed to communicate with the Plaintiffs with complete candor and honesty.

    d) Failed to adopt and follow proper claims handling procedures to be implemented as to the defense and resolution of the underlying claims against the Plaintiffs.

    e) Negligently and carelessly adjusted and defended the underlying claims against the Plaintiffs.

    f) Improperly allocated Donor Claims to the RTI Policies so as to limit the Insurer's exposure rather than the Plaintiffs' exposure.

87. As a result of Defendants' breach of fiduciary duty, the Plaintiffs have been damaged to include but not limited to the diminution of their limits under the RTI Policies and the incurring of attorney's fees and litigation expenses.

88. The Plaintiffs have agreed to pay the undersigned counsel reasonable attorneys fee, paralegal fee, expenses and costs for having to represent the Plaintiffs in these claims against the Defendants.

Wherefore, the Plaintiffs, RTI and Donor Services, demand judgment against the Defendants, Lexington Insurance Company and Chartis Claims, Inc., for damages including, but not limited to, compensatory damages, expenses, costs, pre-judgment interest, post-judgment interest, attorneys fees and paralegal fees pursuant to Florida Statute 627.428 (and all other applicable laws or statues giving rise to attorneys fees and costs) and such further relief as deemed appropriate in the premises and ordered by this court.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a Jury Trial on all issues so triable in this matter.

_[signature]_

**Michael S. Rywant, Esquire**
**Trial Counsel**
Fla. Bar No. 240354
mrywant@rywantalvarez.com
Rywant, Alvarez, Jones, Russo & Guyton, P.A.
2440 S.W. 76th Street, Ste. 130
Gainesville, Florida 32608
(Tel) 352-333-3700
(Fax) 352-333-3706
Attorney for Plaintiff, RTI and Donor Services